UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL–CIO, et al., Appellants

v.

Drew LEWIS, Secretary of Transportation, et al.

No. 82–1606.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 14, 1983.

Decided Feb. 4, 1983.

Kathy L. Krieger, Washington, D.C., with whom William A. McGowan and Robert J. Pleasure, Washington, D.C., were on brief, for appellants.

Kay L. Richman, Atty., Dept. of Justice, Washington, D.C., with whom Edward J. Shawaker, Atty., Dept. of Justice, Washington, D.C., was on brief, for appellees.

Christine Curtis, San Francisco, Cal., was on brief, for amicus curiae, urging reversal.

Before WALD and GINSBURG, Circuit Judges, and BAZELON, Senior Circuit Judge.

Opinion PER CURIAM.

PER CURIAM:

Appellants, United Brotherhood of Carpenters and Joiners of America, AFL–CIO, and its affiliates, Local Unions Nos. 34, 2375, and 2396 (collectively, "UBC") seek relief from district court orders dismissing their complaint against appellees, Secretary of Transportation Drew Lewis, United States Coast Guard Commandant John B. Hayes, and President Ronald Reagan. In the district court, UBC sought declaratory, injunctive, and mandatory relief to compel appellees to perform their statutory duties under the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331–1356, as amended by the Outer Continental Shelf Lands Act Amendments of 1978, Pub.L. No. 95–372, 92 Stat. 632–669 ("Amendments"). Specifically, UBC sought to compel Secretary Lewis and Commandant Hayes to issue certain manning regulations required by Section 30 of the Amendments, 43 U.S.C. § 1356, to force immediate compliance with those manning provisions, and to compel President Reagan to make certain factual determinations concerning the status of foreign countries' national manning requirements referred to in Section 30(c)(2), 43 U.S.C. § 1356(c)(2). The district court granted appellees' motion to dismiss, holding that issuance of the regulations while UBC's case was pending rendered that portion of its claim moot, that it would be "grossly unfair" to require retroactive application of the regulations before the one-year statutory period between issuance and enforcement had elapsed, and that the court lacked subject matter jurisdiction to compel President Reagan to make the statutory findings. We affirm.

I. BACKGROUND

In § 1356(a)(3) of the Outer Continental Shelf Lands Act Amendments of 1978,[1] Congress expressly directed the Secretary of Transportation to issue, within six months of September 18, 1978, regulations

---

1. 43 U.S.C. § 1356(a)(3) provides in full:

(a) Within six months after September 18, 1978, the Secretary of the Department in which the Coast Guard is operating shall issue regulations which require that any vessel, rig, platform, or other vehicle or structure—

(3) which is used at any time after the one-year period beginning on the effective date of such regulations for activities pursuant to this subchapter, be manned or crewed, except as provided in subsection (c) of this section, by citizens of the United States or aliens lawfully admitted to the United States for permanent residence.

requiring employment of United States citizens and permanent resident aliens on any vessels, rigs, platforms, or other vehicles or structures ("OCS units") involved in exploration and development activities on the Outer Continental Shelf ("OCS"). According to that section, the Secretary was to delay enforcement of the regulations for one year after they were issued. In § 1356(c)(2), the Amendments exempted from the operation of § 1356(a)(3) OCS units predominantly owned or controlled by citizens of foreign countries, unless the President determines that such foreign nations have implemented national manning requirements for exploration and development activities in their own offshore areas.[2]

When UBC filed this suit in district court on October 6, 1981, the Secretary of Transportation had not issued the regulations required by § 1356, nor had the President made any factual determinations under § 1356(c)(2) regarding the manning policies of any other countries. On January 4, 1982, however, appellees filed a motion to suspend all proceedings (other than a pending motion of the United States Attorney to appear as *amicus curiae* for the purpose of suggesting that service of process on the President be quashed for lack of subject matter jurisdiction and the action dismissed as to the President) until March 31, 1982, on the ground that they expected to issue manning regulations by March 15, 1982, and that this action would render UBC's primary claim moot. On February 12, 1982, the district court granted the United States Attorney's motion to appear, accepted his "Suggestion" that service of process upon the President be quashed, and dismissed the action against the President with prejudice. On February 16 the court suspended the remaining proceedings until March 15.

The Secretary issued the manning regulations on March 4, 1982, effective April 5, 1982. 47 Fed.Reg. 9366 (1982) (to be codified at 33 C.F.R. § 141). Based on his reading of § 1356(a)(3), the Secretary directed that the regulations not be enforceable for one year, that is, until April 5, 1983. *Id.* at 9380. On May 21, 1982, the district court dismissed the action against the remaining defendants and refused to reconsider its earlier order dismissing the action against the President. UBC then filed this appeal, seeking reversal of the district court's order and a judgment in its favor requiring that the § 1356(a)(3) manning regulations be given the congressionally mandated effective date so as to permit their immediate enforcement, as well as a determination that the President must forthwith commence the survey of foreign offshore manning policies and practices necessary for implementation of 43 U.S.C. § 1356(c)(2).

## II. ANALYSIS

In district court, UBC sought to have the March 4, 1982, manning regulations dated so that they would become effective as of either March 18, 1979 (six months after the enactment of the statute, as mandated by § 1356(a)(3)), or May 1, 1980 (the date the regulations were initially published in proposed form), and therefore enforceable as of either March 18, 1980, or May 1, 1981. The district court refused to grant the requested relief, holding that such relief would allow the regulations to be applied retroactively and that, under the test of *SEC v. Chenery Corp.*, 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947), retroactive application would be "grossly unfair" to employers required to comply with the regulations and contrary to the express intent of Congress, which intended the regu-

**2.** 43 U.S.C. § 1356(c)(2) provides in full:

(c) The regulations issued under subsection (a)(3) of this section shall not apply—
(2) to any vessel, rig, platform, or other vehicle or structure, over 50 percent of which is owned by citizens of a foreign nation or with respect to which the citizens of a foreign nation have the right effectively to control, except to the extent and to the degree

that the President determines that the government of such foreign nation or any of its political subdivisions has implemented, by statute, regulation, policy, or practice, a national manning requirement for equipment engaged in the exploration, development, or production of oil and gas in its offshore areas.

lations to be "prospective" only. Memorandum Opinion, May 21, 1982, Record at No. 26. On appeal, UBC asserts that the district court misperceived the nature of the remedy it sought in that court. While it still seeks a judgment requiring that the regulations be given the congressionally mandated effective date, it does so, it argues, to permit their immediate (not their retroactive) enforceability, which can begin only one year after date of issuance.

In support of its requested remedy, UBC asserts that Congress clearly intended the manning requirements embodied in § 1356(a)(3) to be promulgated within six months of September 18, 1978, and the one-year enforcement delay period to expire on March 18, 1980. The legislative history, UBC contends, confirms that Congress expected the section to be applied "to vessels, vehicles or structures used one year after enactment of the regulations and thus no later than 18 months after enactment of the 1978 amendments." H.Conf.Rep. No. 1474, 95th Cong., 2d Sess. 125 (1978) U.S.Code Cong. & Admin.News 1978, pp. 1674, 1724. As a result, UBC concludes, assigning the regulations an enforcement date of April 5, 1983, is contrary to the congressional directive that manning regulations be issued and enforced on two fixed dates.

UBC thus argues that only immediate enforcement of the regulations will have the effect of placing all parties—American workers and OCS employers—in positions as close as is now possible to those they could reasonably have expected in reliance upon § 1356(a)(3). UBC counters any suggestion that current application of the regulations would be unfair to OCS employers by pointing out that those employers have been on notice as to their manning obligations since 1978; that they have enjoyed a windfall of two years' nonenforcement be-

yond the one-and-a-half-year grace period allowed by the statute; and that, in any case, they will not be unfairly subject to penalties for noncompliance if immediate enforcement is allowed, since 43 U.S.C. § 1350 provides for notice of noncompliance and a reasonable period for corrective action. In contrast, UBC contends, the failure to enforce the regulations immediately harms American workers, the intended beneficiaries of § 1356(a)(3).

Although we are sympathetic to the underlying merits of UBC's claims that it has suffered from the Secretary's delay in issuing the regulations, we cannot find any support in the statute for ordering immediate enforcement. On its face, § 1356(a)(3) specifically requires that the manning regulations become enforceable one year after their issuance, not eighteen months after enactment of the statute. Although it is true that Congress expected the regulations to be issued within six months, with enforcement beginning twelve months thereafter, it is also true that it did not make the one-year delay in enforcement conditional on the issuance of the regulations within six months. Instead, the statute specifically allows employers one year to come into compliance with the manning requirements after issuance. While we do not condone the Department of Transportation's failure to comply with an express statutory mandate for prompt issuance of regulations, we also cannot ignore the plain language of § 1356(a)(3), which delays enforcement for one year after actual issuance to "avoid any disruption in OCS activities."[3] *Id.* at 124–25, U.S.Code Cong. & Admin.News 1978, p. 1723. As a result, we must affirm the district court's decision to deny retroactive dating of the § 1356(a)(3) manning regulations.

---

**3.** Appellees point out that Congress determined that employers should have a full year, after promulgation of final regulations, to adjust to the § 1356 requirements because of the time-consuming and complicated procedures required for them to bring their operations into compliance, including complex reporting requirements, numerous technical provisions re-

quiring changes in operations, and so on. *See* Appellees' Brief at 24; 47 Fed.Reg. 9380–9381 (1982) (to be codified at 33 C.F.R. § 141). Congress thus sought to avoid any disruption to ongoing OCS operations by allowing a one-year transitional "start-up" period before the regulations became enforceable.

■ UBC also contends that the district court erred in finding that it lacked subject matter jurisdiction to hear UBC's complaint against President Reagan. UBC sought to compel the President to comply with 43 U.S.C. § 1356(c)(2), which states that the § 1356(a)(3) regulations shall not apply to foreign-owned or controlled OCS units unless the President determines that the foreign country in question currently implements national manning requirements in its own offshore areas. UBC complains that the President has made no efforts to obtain the information necessary for such determinations nor has he delegated the task to any other official. It emphasizes that it does not seek relief ordering the President to determine that the § 1356(a)(3) manning requirements should be applied to any particular foreign OCS units, but rather that it only seeks enforcement of the President's "ministerial duty" under § 1356(c)(2) to obtain the information concerning the manning policies of foreign nations necessary to make such determinations.

Like the district court, we believe that the President's "duty" under § 1356(c)(2) is discretionary rather than ministerial in nature and that the court accordingly lacked the authority to compel the executive to undertake such discretionary acts. *See, e.g., Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp.,* 333 U.S. 103, 68 S.Ct. 431, 92 L.Ed. 568 (1948); *NTEU v. Nixon,* 492 F.2d 587 (D.C.Cir.1974). On its face, § 1356(c)(2) authorizes, but does not require, the President to make the determinations of foreign practice that would allow application of the statute to foreign-owned or controlled OCS units. The relevant legislative history reinforces the plain language of the statute. In explaining the provision, the congressional conferees stated:

> *If* the President finds that a foreign nation . . . has adopted a national manning requirement . . . he *may* apply this . . . provision. . . . The conferees *expect* the President . . . to make a continuing review of existing and future statutes, rules, policies, and practices and to apply this provision [§ 1356(c)(2) ] in appropriate circumstances. The conferees *expect* that Congress will actively exercise its oversight responsibilities to assure that this provision is utilized in appropriate circumstances.

H.Conf.Rep. 1474, 95th Cong., 2d Sess. 125 (emphasis added) U.S.Code Cong. & Admin. News 1978, p. 1724. This is precatory not mandatory language; the determinations referred to in the statute clearly fall within the President's discretion. The district court therefore properly dismissed the complaint against the President.

For the foregoing reasons, the judgment of the district court is

*Affirmed.*